1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9

10

AMERIPRISE FINANCIAL SERVICES, LLC,

Plaintiff,

NO.

11

**DECLARATION OF DAVID CALL**

12

v.

13

DOUGLAS KENOYER, an individual and LPL
FINANCIAL, LLC,

14

Defendants.

15

16

I, David Call, declare the following under the penalties of perjury:

17    1.    I am over 21 years of age and am fully competent to make the statements contained in

18  this Declaration based upon my knowledge.

19    2.    I am a Franchise Field Vice President with the Plaintiff in this matter, Ameriprise

20  Financial Services, LLC ("Ameriprise"). In this capacity, I oversee franchise advisors along the west

21  coast of the United States of America, including those within the State of Washington, such as

22  Defendant Douglas Kenoyer ("Kenoyer").

23    3.    Ameriprise employs various and substantial methods to protect its client information

24  including, for example: (i) restricting access to those persons and/or affiliates whose affiliations with

25  Ameriprise require them to refer to the confidential information; (ii) requiring authorized persons to

26  use a secure password to access their computer terminals and the firm's intranet; (iii) providing

DECLARATION OF DAVID CALL - 1

1  constant reminders about the confidential nature of the information contained in the records and the

2  need to protect it; (iv) routinely ensuring employees and other authorized persons are made aware of,

3  and know, that they must maintain the strict confidentiality of client information; (v) maintaining a

4  detailed privacy policy; and (vi) including robust confidentiality provisions and appropriate restrictive

5  covenants in its agreements with financial advisors, among other protective measures.

6      4.    Kenoyer joined Ameriprise on or around April 26, 2006. Eventually, Kenoyer became

7  an Independent Franchise Advisor through Ameriprise. In conjunction therewith, Kenoyer executed

8  the Ameriprise Financial Services, LLC Independent Advisor Business Franchise Agreement (the

9  "Franchise Agreement"). The Franchise Agreement contains various restrictive covenants, including

10  a confidentiality agreement and non-solicitation covenants. True and accurate copies of the relevant

11  portions of the Franchise Agreement are attached as **Exhibit A**.

12      5.    With respect to confidentiality, the Franchise Agreement provides:

13      Independent Advisor has or may have access to Ameriprise Financial confidential

14  information and trade secrets that Independent Advisor agrees has great value to
Ameriprise Financial. Independent Advisor agrees that because of such access,

15  Independent Advisor is in a position of trust and confidence with respect to this
information. To protect Client confidentiality, Ameriprise Financial goodwill, trade

16  secrets and other proprietary and confidential business information, Independent
Advisor agrees to not, during the term of this Agreement or anytime thereafter, except

17  as permitted under Section 14 regarding transfers of the Independent Financial Advisor
Business, communicate, divulge, or use for himself or herself except pursuant to the

18  System, or for the benefit of any other person, association, corporation or partnership
any confidential information or trade secrets, including but not limited to Client names,

19  addresses, and data and know-how concerning the methods of operation of the System
and the business franchised hereunder that may be communicated to Independent

20  Advisor or of which Independent Advisor may be apprised by virtue of Independent

21  Advisor's operation under the terms of this Agreement (…)

22  Independent Advisor agrees that, without limitation, Client names, addresses, data and

23  other personal and financial information contained and recorded in Client records are
confidential and the property of Ameriprise Financial.

24  *Id.* § 10(A).

25      6.    With respect to non-solicitation *during* Kenoyer's affiliation with Ameriprise, the

26  Franchise Agreement provides:

DECLARATION OF DAVID CALL - 2

[D]uring the term of this Agreement Independent Advisor agrees to not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person or entity:

a) encourage, assist, participate, induce, or attempt to encourage, assist, participate or induce any Client or prospective business or customer to terminate an agreement with Ameriprise Financial, Ameriprise Financial's affiliates, Issuers, or any financial advisor business under the System;

b) encourage, assist, participate, induce, or attempt to encourage, assist, participate or induce any Client or prospective business or customer to terminate, surrender, redeem, or cancel any action related to Products & Services acquired or ordered from or through Ameriprise Financial, Ameriprise Financial's affiliates, Issuers, or any financial advisor business under the System, except as provided in the Manuals or with Ameriprise Financial's written approval and consent;

c) solicit any Clients that Independent Advisor contacted, serviced or learned about while operating under this Agreement to open an account other than an Ameriprise Financial account or to sell any investment, financial or insurance products or services other than through Ameriprise Financial with Ameriprise Financial's written approval and consent; [or]

e) encourage, induce, or attempt to encourage or induce or otherwise solicit any person who is employed by Ameriprise Financial or associated or affiliated with Ameriprise Financial as an Independent Advisor, independent contractor or agent to terminate their employment, association or other affiliation with Ameriprise Financial.

*Id.* § 19(B)(1).

7.    With respect to non-solicitation *after* Kenoyer's affiliation with Ameriprise, the Franchise Agreement provides:

[F]or one year after the expiration or termination of this Agreement, Independent Advisor agrees to not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person or entity:

a) encourage, induce, or attempt to encourage or induce any Client that Independent Advisor contacted, serviced or learned about while operating under this Agreement to terminate an agreement with Ameriprise Financial, Ameriprise Financial affiliates, Issuers, or any financial advisor business under the System;

b) encourage, induce, or attempt to encourage or induce any Client that Independent Advisor contacted, serviced or learned about while operating under this Agreement, to terminate, surrender, redeem, or cancel any action related to Products & Services acquired or ordered from or through Ameriprise Financial, Ameriprise Financial's affiliates, Issuers, or any financial advisor business under the System, except as

DECLARATION OF DAVID CALL - 3

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

provided in the Manuals or with Ameriprise Financial's written approval and consent;

c) solicit any Clients that Independent Advisor contacted, serviced or learned about while operating under this Agreement for the purpose of the Client opening an account other than an Ameriprise Financial account, purchasing investment, financial, or insurance products or services, purchasing any product or service, the type of which is offered by Ameriprise Financial, or purchasing any investment, financial or insurance products or services other than through Ameriprise Financial with Ameriprise Financial's written approval and consent; and/or

d) encourage, induce, or attempt to encourage or induce or otherwise solicit any person who is at that time employed by Ameriprise Financial or associated or affiliated with Ameriprise Financial as an Independent Advisor, independent contractor or agent to terminate their employment, association or other affiliation with Ameriprise Financial.

*Id.* § 19(B)(2).

8.      As an Independent Franchise Advisor, Kenoyer operated offices in Arlington, Washington and Spokane, Washington.

9.      During his tenure at Ameriprise, Kenoyer obtained additional clients through internal channels at Ameriprise, including Internal Client Transfers.

10.     For example, on May 31, 2022, Ameriprise provided Kenoyer with the substantial benefit of servicing a book of business of another Ameriprise financial advisor, adding 1,031 clients and $133,879,806 in assets under management to Kenoyer's book of business. In conjunction with Ameriprise's agreement to allow Kenoyer to service these clients, Kenoyer executed an Internal Client Transfer Agreement ("ICT Agreement," the clients covered thereunder the "ICT Clients"). Therein, Kenoyer agreed that the restrictive covenants contained in the Franchise Agreement—i.e. confidentiality and non-solicitation obligations outlined above, apply to the ICT Clients without exception for three years subsequent to the ICT Agreement date.

11.     On September 5, 2024, Kenoyer submitted his notice of resignation to Ameriprise ("Notice of Resignation"). A true and accurate copy of Kenoyer's Notice of Resignation is attached as **Exhibit B**. Kenoyer's Notice of Resignation provided his resignation would be effective September 19, 2024 and that he would join a competitor, fellow Defendant LPL Financial LLC ("LPL").

12.     Kenoyer's Notice of Resignation also purports to invoke the Protocol for Broker

1 │ Recruiting (the "Protocol"). The "Protocol" is a litigation forbearance agreement specific to the
2 │ financial industry that governs the conduct of an advisor transitioning between two Protocol-signatory
3 │ firms. The Protocol permits an advisor to take only a list of certain clients for whom they are the
4 │ registered representative of record along with limited contact information for such clients as long as
5 │ this is the only information the registered representative takes, commonly called a "Protocol List." A
6 │ true and accurate copy of the Protocol is attached as **Exhibit C**. Both Ameriprise and LPL are
7 │ signatories to the Protocol. A true and accurate copy of Ameriprise's joinder letter is attached as
8 │ **Exhibit D**. A true and accurate copy of LPL's joinder letter is attached as **Exhibit E**. A transferring
9 │ advisor may only claim the protections of the Protocol if they have fully complied with its terms.

10 │       13.   It has since come to my attention that Kenoyer violated the Protocol in at least two
11 │ respects as he: (i) pre-solicited Ameriprise clients to follow him to his new employer, Defendant LPL;
12 │ and (ii) misappropriated Ameriprise confidential client information. As Kenoyer failed to comply with
13 │ the Protocol, he is therefore not permitted to claim any protection thereunder.

14 │       14.   First, it is clear that Kenoyer improperly pre-solicited Ameriprise clients to join him in
15 │ his upcoming transition to LPL as Kenoyer placed notes into the client relationship manager platform
16 │ ("CRM") expressly reflecting pre-solicitation of Ameriprise clients. In addition, various clients that
17 │ were serviced by Kenoyer approached *other* Ameriprise advisors prior to Kenoyer submitting his
18 │ Notice of Resignation, stating Kenoyer informed them he planned to depart Ameriprise for another
19 │ firm and asked them to follow him.

20 │       15.   Second, Kenoyer improperly retained substantial confidential information related to
21 │ the ICT Clients. In conjunction with his Notice of Resignation, Kenoyer provided his purported
22 │ "Protocol List." A copy of the purported "Protocol List," with substantial redactions for client privacy,
23 │ is attached as **Exhibit F**. The List contained client names and detailed contact information such as
24 │ phone numbers, addresses, and email addresses. Upon his resignation, Kenoyer serviced just 583
25 │ clients and $143,674,511 in assets under management. Thus, it is clear the majority of Kenoyer's book
26 │ of business was obtained via the above-described Internal Client Transfer. Indeed, more than half of

1  the clients on Kenoyer's purported Protocol List were obtained via the Internal Client Transfer.

2      16.    Clients acquired via Internal Client Transfer are ineligible for inclusion under the

3  Protocol pursuant to exceptions contained in Ameriprise's Protocol Joinder Letter. *See* Exhibit D at

4  §3. The contractual language between Kenoyer and Ameriprise governs. As such, Kenoyer's retention

5  of this Ameriprise confidential information represents another distinct violation of the Protocol.

6      17.    Thus, Kenoyer repeatedly violated the Protocol by pre-soliciting Ameriprise clients and

7  misappropriating substantial Ameriprise confidential information related to the ICT Clients. As stated

8  above, when a transitioning advisor fails to comply with the requirements of the Protocol, the advisor

9  can no longer claim the protections of the Protocol and the terms of the contractual agreements

10 between the advisor and their former firm apply. As Kenoyer violated the Protocol, he is no longer

11 able to claim any protections thereunder and the contractual agreements between Kenoyer and

12 Ameriprise control:

13          a. Pursuant to the Franchise Agreement, Kenoyer is not permitted to retain any

14             confidential information for any client, nor to solicit any Ameriprise client.

15          b. Pursuant to the ICT Agreement, Kenoyer is not permitted to retain any client

16             information related to any client obtained thereunder, nor to solicit any client

17             obtained thereunder.

18     18.    Apparently believing he would be shielded by the Protocol, Kenoyer has openly,

19 unambiguously, and improperly retained Ameriprise confidential information and solicited

20 Ameriprise clients despite his contractual and statutory obligations to the contrary. To this day,

21 Kenoyer continues to improperly misappropriate Ameriprise's confidential information including, but

22 not limited to, using such information to improperly solicit Ameriprise clients.

23     19.    To conduct his everyday business at LPL, there is an extremely high likelihood that

24 Kenoyer uploaded the misappropriated confidential information to LPL's systems, servers, and

25 devices and that LPL has similarly misappropriated the confidential information to assist in improperly

26 soliciting Ameriprise's clients. LPL condones, encourages, and compensates Kenoyer for his wrongful

conduct as such misconduct improves client transition rates for its own pecuniary benefit. LPL receives a substantial profit from each Ameriprise client and financial advisor improperly solicited to join LPL.

20.    Kenoyer's pre-solicitation and solicitation of Ameriprise's clients has unfortunately proved successful. Numerous clients with millions of dollars in assets have moved with him to LPL.

21.    In the absence of an injunction, Ameriprise will suffer significant and irreparable harm in the form of, *inter alia*, use and disclosure of Ameriprise's confidential client information, present economic loss which is unascertainable at this time, future economic loss which is presently incalculable, and loss of client goodwill.

22.    By contrast, the injunction requested by Ameriprise would impose little to no burden upon Defendants as it simply requires Defendants to comply with existing law, rules, and regulations.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED this _11_ day of October, 2024.

David Call

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

**CERTIFICATE OF SERVICE**

I certify that on October 14, 2024, I electronically filed the foregoing document with the Clerk of the Court via CM/ECF which will notify all parties in this matter who are registered with the Court's CM/ECF filing system of such filing. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this ___14th___ day of October, 2024.

*s/ Jeanne Perrin*
Jeanne Perrin, Legal Practice Assistant
Foster Garvey PC
1111 Third Avenue Suite, 3000
Seattle, Washington 98101
jeanne.perrin@foster.com

DECLARATION OF DAVID CALL - 8