The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERIPRISE FINANCIAL SERVICES, LLC,<br>Plaintiff,<br><br>v.<br><br>DOUGLAS KENOYER, an individual and LPL<br>FINANCIAL LLC,<br>Defendants. | NO. 2:24-cv-1675<br><br>**ORDER GRANTING PLAINTIFF'S<br>MOTION FOR TRO** |

## I.     INTRODUCTION

This matter comes before the Court on a Motion for a Temporary Restraining Order or Preliminary Injunction, filed by Plaintiff Ameriprise Financial Services, LLC ("Ameriprise"). Dkt. No. 2. Plaintiff seeks an injunction against Defendants Douglas Kenoyer, a financial advisor affiliated with Ameriprise from 2006 to September 2024; and LPL Financial LLC ("LPL"), the financial advisory Kenoyer joined after leaving Ameriprise. Having reviewed the briefs filed in support of and in opposition to Plaintiff's motion, and having held a hearing on the motion, the Court finds and rules as follows.

## II.     BACKGROUND

Defendant Douglas Kenoyer is a financial advisor (or "registered representative"), who joined the financial advisory firm Ameriprise in 2006. Compl., ¶ 15. On September 5, 2024,

ORDER GRANTING PLAINTIFF'S
MOTION FOR TRO

- 1

Kennoyer tendered his resignation, effective September 19, 2024. He begin working with Defendant LPL the following day. Ameriprise alleges that Kenoyer misappropriated confidential information belonging to Ameriprise and solicited Ameriprise clients prior to his departure, in violation of, among other things, certain restrictive covenants governing his arrangement with Ameriprise. By this action, Ameriprise seeks an injunction ordering Kenoyer and LPL to return all client-related information and to forgo any further solicitation of clients Kenoyer served while at Ameriprise.

Relevant to this dispute, over a series of transactions beginning in 2019, Kenoyer purchased the book of business belonging to Ameriprise franchise owner Jan Gerards. This purchase (the "Internal Client Transfer," or "ICT") included over 1,000 clients and approximately $134 million in assets under management, and was financed by means of Kenoyer's personal funds and a commercial loan. Kenoyer Decl., ¶¶ 2-6. As part of that transaction, Kenoyer entered into the "Independent Advisor Business Franchise Agreement" ("Franchise Agreement") with Ameriprise. By that agreement, Kenoyer was obligated "to not, during the term of this Agreement or anytime thereafter, . . . communicate, divulge, or use for himself . . . or for the benefit of any other person, association, corporation or partnership any confidential information or trade secrets, including but not limited to Client names, addresses, and data." Call Decl., Ex. A. The Franchise Agreement also provided that Kenoyer would not "encourage, assist, participate, induce, or attempt to encourage, assist, participate or induce any Client or prospective business or customer to terminate an agreement" with Ameriprise, or "solicit any Clients that Independent Advisor contacted, serviced or learned about while operating under this Agreement to open an account other than an Ameriprise Financial account." *Id*.

ORDER GRANTING PLAINTIFF'S
MOTION FOR TRO

- 2

As noted, Kenoyer left Ameriprise for LPL in September 2024. Ameriprise has alleged, and Defendants have not denied, that in the months leading up to his departure, Kenoyer began soliciting Ameriprise clients to follow him to another firm. *See* Kinney Decl., ¶7; Ex. A. Kenoyer has submitted a declaration stating that as early as April 2024, he advised his direct supervisor and Ameriprise Vice President David Call that he (Kenoyer) was dissatisfied with his relationship with Ameriprise, and was exploring an affiliation with other firms. Kenoyer states that he told Call that he was sharing this information with some of his clients. Kenoyer Decl., ¶¶ 15, 16, 23, 27. While Call admits that he "was aware of Kenoyer's general dissatisfaction with his relationship with Ameriprise," he avers that he "did not learn of his pre-solicitation until immediately prior to Kenoyer submitting his Notice of Resignation," and that "Kenoyer's claim he informed me that he was pre-soliciting Ameriprise's clients is false." Suppl. Call Dec., ¶¶ 3-5.

Both Ameriprise and LPL are signatories to what is known as the "Protocol for Broker Recruiting" (the "Protocol"). Under the Protocol, signatory firms agree that financial advisors moving from one firm to another "may take only the following account information: client name, address, phone number, email address, and account title of the clients that they serviced while at the firm," known as the "Protocol List," and "are prohibited from taking any other documents or information." Call Decl., Ex. C. However, this allowance applies only to advisors who comply with other restrictions in the Protocol including, most relevantly to this case, that they be allowed to solicit customers that they serviced while at their former firms "only *after* they have joined their new firms." *Id*. (emphasis added). Ameriprise has also clarified, in what is referred to as the "Joinder Letter," that the Protocol allowances do not apply to accounts acquired from, among others, Ameriprise independent financial advisors (such as the ICT involving Gerards), for a

ORDER GRANTING PLAINTIFF'S
MOTION FOR TRO

- 3

period of three years following such acquisition. Call Decl., Ex. D, ¶ 3.

When Kenoyer moved from Ameriprise to LPL, he provided Ameriprise with his "Protocol List" of clients that he intended to take with him, which included a substantial number of clients he had acquired from Gerards. For this reason, and because it has discovered that Kenoyer had solicited clients before leaving Ameriprise, Ameriprise now claims that the Protocol does not apply to Kenoyer's departure and does not authorize him to take client information with him to LPL. By this motion, Ameriprise seeks to enjoin Defendants from retaining the information on the Protocol List or from taking any further action to solicit any of the clients Kenoyer served while at Ameriprise.

## III.    DISCUSSION

### A.  Standards for Temporary Restraining Order and Preliminary Injunction

A TRO, like a preliminary injunction, is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To make such a showing, the moving party bears the burden of demonstrating the following elements: "(1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

### B.  Whether Plaintiff Has Met Its Burden Under TRO Standard

#### 1.  Likelihood of Success on the Merits[1]

---

[1] Because, as discussed below, the Court finds that Ameriprise has demonstrated a likelihood of success on its breach of contract claim, it need not and does not reach the merits of Ameriprise's other claims.

ORDER GRANTING PLAINTIFF'S
MOTION FOR TRO

- 4

Ameriprise first argues that the Franchise Agreement is valid and enforceable, a proposition that Defendants do not dispute. Defendants also do not appear to dispute that Kenoyer did in fact solicit clients before leaving Ameriprise, and that such actions would constitute a breach of the Franchise Agreement. Instead, the question raised by Defendants is whether Kenoyer can claim the protections of the Protocol. As referenced above, the Protocol authorizes registered representatives, when moving from one Protocol signatory to another, to take with them limited information related to their clients, but only when they have otherwise complied with the Protocol's provisions. The Protocol also allows advisors to use such information to solicit clients, but only *after* they have joined their new firms.

The Court concludes that Ameriprise has demonstrated a likelihood of success on the question of whether the Protocol applies to shield Defendants in this case: it does not. There is no dispute that Kenoyer solicited at least some of the clients he served, while still affiliated with Ameriprise. Kinney Decl., ¶ 6 ("Kenoyer also told me he had conversations with clients soliciting them to follow him to LPL Financial, LLC ("LPL") upon his eventual move."); Ex. A. Defendants also do not deny that if Kenoyer breached the Protocols restrictions, he is not entitled to their protections. The only argument they make as to why the Protocol should nevertheless shield them from having to comply with the Franchise Agreement is that Ameriprise "ratified" Kenoyer's pre-solicitation. Defendants argue that Kenoyer told Call that he, Kenoyer, was soliciting Ameriprise clients, as early as April 2024. Kenoyer Opp. at 11. Kenoyer's declaration, however, does not in fact support this argument. As noted above, Kenoyer claims only that Call was aware Kenoyer was dissatisfied with his affiliation with Ameriprise, and that he had advised some of his clients as much. On closer inspection of his declaration, it is apparent that Kenoyer

ORDER GRANTING PLAINTIFF'S
MOTION FOR TRO

does *not* testify that he told Call he was in fact soliciting those clients. Thus the facts do not support Defendants' ratification argument, even assuming (without deciding) that Call had the authority to ratify Kenoyer's actions.

In addition, the Court finds that Ameriprise is likely to prevail in demonstrating that even if Kenoyer had not violated the Protocol by pre-soliciting clients, he would not be allowed to take information belonging to clients he acquired through the ICT. The Joinder Letter does not, as Defendants argue, carve out only those clients acquired through a loan from Ameriprise, or acquired from advisors not affiliated with Ameriprise. On its face, Paragraph 3 of that letter reads far more broadly than that, excepting from Protocol protections those accounts acquired from, among others, Ameriprise independent financial advisors. *See* Call Decl., Ex. D. It makes no reference at all to accounts acquired through Ameriprise loans, or limit the exception to accounts acquired from non-Ameriprise advisors. Accordingly, the Court finds that Ameriprise has met its burden of demonstrating a likelihood of success on the merits of its breach-of-contract claim.

## 2. Irreparable Harm

Ameriprise has also successfully demonstrated that the harm resulting from Defendants' alleged actions may be irreparable. These injuries may include the loss of reputation, goodwill, and business relationships. Any injury resulting in the absence of an injunction may also be difficult, if not impossible, to accurately calculate. Defendants argue Ameriprise's injuries would be easy to calculate, being "simply a matter of calculating how much income Ameriprise has lost as a result of Kenoyer moving his practice to LPL, and determining for how long Ameriprise is entitled to reimbursement of that lost revenue stream as compensation." Kenoyer Opp. at 17. But "how long Ameriprise is entitled to reimbursement" is precisely the variable that cannot be

known or estimated. Accordingly, Plaintiff's injuries could not simply be reduced to monetary compensation, and it is entitled to an injunction for this reason as well.

### 3. Balance of Equities and Public Interest

The Court determines that the equities do not clearly favor either side, and in any event do not outweigh Plaintiff's strong showing of likelihood of success and irreparable harm. While the Court is mindful of Kenoyer's keen interest in continuing to serve clients with whom he has a relationship, Ameriprise has also demonstrated an interest in protecting the substantial resources it has invested in maintaining the confidentiality and value of its client records. Similarly, neither side has demonstrated that the public interest more clearly favors one outcome over the other and again, in any event has not shown that the public interest would outweigh Plaintiff's clear entitlement to an injunction.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Temporary Restraining Order is GRANTED. It is hereby ordered that:

1. Defendants are required to return all Plaintiff's confidential, proprietary, and trade secret information (whether electronic, hardcopy, or otherwise) within 72 hours of entry of this Order, and Defendants are enjoined from further misusing, disclosing, or possessing such information. This injunction shall not apply to information pertaining to those clients that have already moved with Kenoyer from Ameriprise to LPL.

2. Defendants are prohibited from soliciting any current client serviced by Defendant Kenoyer at Plaintiff.

Further, no bond has been requested, and none is ordered. This Order shall remain in effect until further notice from the Court. The parties shall notify the Court within 14 days of a decision issuing from a FINRA arbitration, or upon agreement that this injunction be dissolved,

ORDER GRANTING PLAINTIFF'S
MOTION FOR TRO

whichever is sooner.

DATED this 25th day of October, 2024.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING PLAINTIFF'S
MOTION FOR TRO

- 8