The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERIPRISE FINANCIAL SERVICES, LLC, Plaintiff, <br><br>v.<br><br> DOUGLAS KENOYER, an individual and LPL FINANCIAL LLC, Defendants. | NO. 2:24-cv-1675 <br><br> **ORDER DENYING MOTION FOR ORDER TO SHOW CAUSE AND CONTEMPT** |

## I.    INTRODUCTION

This matter comes before the Court on a Motion for Order to Show Cause, filed by Plaintiff Ameriprise Financial Services, LLC ("Plaintiff" or "Ameriprise"). Dkt. No. 53. Plaintiff seeks an order requiring Defendants Douglas Kenoyer and LPL Financial LLC ("LPL") "to appear and show cause why they should not be held in civil contempt" for failure to comply with this Court's October 25, 2024 Temporary Restraining Order ("TRO"). Having reviewed the briefs filed in support of and in opposition to Plaintiff's motion, the Court finds and rules as follows.

## II.    BACKGROUND

Defendant Kenoyer is a financial advisor, formerly affiliated with Plaintiff Ameriprise. Kenoyer left Ameriprise on September 5, 2024 and begin working with LPL the following day. On October 14, 2024, Ameriprise filed this lawsuit, seeking an injunction ordering Kenoyer and

ORDER DENYING MOTION FOR
ORDER TO SHOW CAUSE

- 1

LPL to return all confidential client-related information and to forgo any solicitation of clients Kenoyer served while at Ameriprise, pending arbitration on the merits. After reviewing the parties' briefs and supporting evidence, and holding a hearing thereon, the Court granted Plaintiff's motion and entered the TRO. That TRO ordered:

1. Defendants are required to return all Plaintiff's confidential, proprietary, and trade secret information (whether electronic, hardcopy, or otherwise) within 72 hours of entry of this Order, and Defendants are enjoined from further misusing, disclosing, or possessing such information. This injunction shall not apply to information pertaining to those clients that have already moved with Kenoyer from Ameriprise to LPL.

2. Defendants are prohibited from soliciting any current client serviced by Defendant Kenoyer at Plaintiff. TRO, Dkt. No. 51 at 7.

The instant motion seeks an Order to Show Cause concerning Defendants' alleged violation of both provisions in the TRO. After the Court entered the TRO, the parties proceeded to arbitration on the question of injunctive relief, per governing FINRA rules.[1] In that forum, Plaintiff sought and was awarded an additional restraining order, essentially duplicating the TRO entered by this Court. *See* FINRA TRO, Dkt. No. 52. Plaintiff claims that during the course of those arbitration proceedings, Kenoyer offered testimony indicating that even after entry of this Court's TRO, he was soliciting clients he had serviced while he was with Ameriprise. In addition, after FINRA entered its TRO on February 25, 2025, directing Defendants to turn over "confidential, proprietary and trade secret information … not previously returned," Kenoyer produced to Ameriprise approximately 1,600 pages of documents that Plaintiff contends should

---

[1] Pursuant to Rule 13804 of the FINRA Code of Arbitration Procedure for Industry Disputes, a member may seek a temporary injunctive order from a court of competent jurisdiction, which Ameriprise did. Within 15 days of a TRO being entered, the rule requires the parties to proceed to an arbitration hearing on the issue of permanent injunctive relief.

ORDER DENYING MOTION FOR
ORDER TO SHOW CAUSE

- 2

have been produced in response to this Court's TRO. *Id*. at 6. Based on this evidence, Plaintiff contends that both Defendants have violated, and are in continuing violation of, the TRO. Plaintiff moves for an order directing both Defendants to show cause why they should not be sanctioned for civil contempt for violating the Court's TRO.

### III. DISCUSSION

#### A. Standard for Contempt Order

"Civil contempt ... consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (quoting *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir.1993)). A party alleging civil contempt must demonstrate "that (1) the contemnor violated a court order, (2) the noncompliance was more than technical or de minimis, and (3) the contemnor's conduct was not the product of a good faith or reasonable interpretation of the violated order." *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, 475 F. Supp. 3d 1235, 1239 (W.D. Wash. 2020) (citing *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010)). This showing must be by "clear and convincing evidence," not merely a preponderance of the evidence. *Id*. "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986).

**B. Whether Plaintiff Has Demonstrated by "Clear and Convincing" Evidence that Defendants Have Violated the Court's TRO[2]**

Plaintiff argues that Defendants Kenoyer and LPL have each violated both provisions of the TRO. The Court addresses each claim in turn.

**1. Whether Kenoyer Has Violated the TRO by Soliciting Ameriprise Clients**

Plaintiff first contends that Kenoyer has been soliciting Ameriprise clients, in violation of the TRO prohibiting Defendants "from soliciting any current client serviced by Defendant Kenoyer" at Ameriprise. TRO at 7. Plaintiff proffers "examples" of Kenoyer's testimony during the FINRA arbitration as evidence that he has been soliciting Ameriprise clients since the TRO was entered. The testimony includes the following:

Example 1:

Q: And did you text with clients who had not already opened accounts or signed ACATs at LPL subsequent to October 25th, 2024?

A: Only those that had agreed that they were moving their accounts prior to that date.

Q: And you have that agreement in writing someplace, right?

A: No, but I have their intention. I took their intention of transferring from their providing me with documentation as to facilitate that process.

Example 2:

Q: Was it not your intent when you communicated with them after October 25th, 2024 that they would open or sign new account documents or account transfer documents?

---

[2] Kenoyer argues that the FINRA TRO in essence superseded this Court's TRO, and that the latter is therefore no longer in effect or enforceable. The Court's TRO states, however, that it "shall remain in effect until further notice from the Court," and no such notice has been issued. Kenoyer cites no authority for the novel proposition that a FINRA order, without more, will supersede that of a federal court, and the Court rejects this argument out of hand.

ORDER DENYING MOTION FOR
ORDER TO SHOW CAUSE

- 4

A: Yes, but only based on prior solicitation previous to that date.

Q: But at that point in time, they had not -- they were not a client of LPL when you further contacted them? We've concluded that, correct?

A: That's correct.

Example 3:

Q: Okay. So let's walk through this. At some point in time, a client that you pre-solicited at Ameriprise, you contacted after getting to LPL, correct?

A: Yes.

Q: And then after the court order, you recontacted them?

A: Sure. If they had given me instructions to create paperwork and to help them transfer their accounts, I followed through and did that.

Q: Didn't the court order say you were supposed to delete and return all client information for any client who was not already a client of yours as of October 25th, 2024?

A: I don't believe it said that specifically. Pl.'s Mot. at 5-6 (citing Composite Exhibit 4, Kenoyer testimony, January 28, 2024, at 106:23-107:7; 110:6-15; and 156: 6-17).

It is Plaintiff's position that this testimony is "clear and convincing" proof that Kenoyer has solicited (and continues to solicit) Ameriprise clients after entry of the TRO on October 25, 2024. The Court disagrees. The testimony proves only that Kenoyer followed up with (or "recontacted," in Plaintiff's counsel's words) clients that he had serviced at Ameriprise. Importantly, the testimony shows that these interactions were only with clients who had, before October 25, 2024, expressed their intent to move with Kenoyer to LPL. Such interactions cannot fairly (let alone "clearly and convincingly") be characterized as solicitations. *See U.S. Bank Nat'l Ass'n v. Kirk*, No. 25-CV-1926 (LMP/DTS), 2025 WL 1604092, at *4 (D. Minn. June 6, 2025)

ORDER DENYING MOTION FOR
ORDER TO SHOW CAUSE

- 5

(observing that "solicitation . . . requires an invitation or encouragement for [plaintiff's] clients to join Defendants. . . . '[S]olicitation' does not occur when a client initiates contact with the former employee" but requires evidence of "persuasion") (citing Black's Law Dictionary (12th ed. 2024)) (defining "solicitation" as an "act or an instance of requesting or seeking to obtain something; a request or petition"). This is particularly so given that the TRO did not define "solicit," or otherwise make clear that Kenoyer was categorically prohibited from interacting with former Ameriprise clients, or from responding to inquiries from or taking on such clients. *Cf. CW Gainesville, LLC v. Davis*, No. 1:20CV98-RH-GRJ, 2020 WL 10186421, at *1 (N.D. Fla. Aug. 7, 2020) (holding defendant in contempt for violating TRO that instructed him not to "directly or indirectly solicit specified clients," where TRO explicitly defined "solicit" to mean "any direct or indirect communication or contact of any kind that could reasonably be expected to result in developing a relationship that could generate business or to encourage an employee or client to leave Plaintiff's business").

"[C]ivil contempt is a severe remedy, . . . and principles of basic fairness require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt." *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019). For contempt to attach, a party must be in violation of "specific" and "definite" terms of an order. *Cetacean Research*, 774 F.3d at 945. It was Ameriprise who originally proposed use of the word "solicit" in the TRO. *See* Proposed Order, Dkt. No. 2-1, at 3. If Plaintiff intended that the TRO "specifically and definitely" prohibit Kenoyer from continuing conversations with clients who had already expressed their intent to transfer assets from Ameriprise to LPL, it could and should have proposed such language be

ORDER DENYING MOTION FOR
ORDER TO SHOW CAUSE

- 6

included in the TRO.[3] In the absence of evidence that Kenoyer solicited clients, *i.e.*, invited or encouraged communication with clients who had not already expressed an intent to move accounts to LPL, subsequent to entry of the TRO, Plaintiff has failed to demonstrate by clear and convincing evidence that it is entitled to a contempt order related to Kenoyer's contact with Ameriprise clients.

2. **Whether Kenoyer Has Violated the TRO by Retaining Ameriprise Documents**

Plaintiff also claims that Kenoyer has violated the TRO by failing to return all of its "confidential, proprietary, and trade secret information . . . within 72 hours of entry" of the TRO, and potentially, by continuing to possess such information. TRO at 7. In response to this Court's TRO, Kenoyer did return the so-called "Protocol List," which was a list of Kenoyer's Ameriprise clients. As noted above, however, Kenoyer did not return an additional 1,600 pages of documents until after the FINRA panel ordered him to return whatever remaining documents he had "not previously returned," more than four months after this Court entered the TRO.

Plaintiff repeatedly characterizes these documents as confidential, claiming (without citation to anything in the record) that they comprise "spreadsheets of client names and information, Ameriprise client statements, and Ameriprise account opening documents" and that they contain "substantial Ameriprise confidential information such as client names, social security numbers, account values, investment products and vehicles, net worth, and more clearly confidential information." Mot. at 7. However, Plaintiff has not provided any of these documents

---

[3] The Court does not mean to imply such a request would necessarily have been granted. As the Court stated during the TRO hearing, Ameriprise was not asking for, and would not have been granted, an injunction that required Kenoyer's customers to "go work with somebody else, when a customer wants to work with him and is working with him." 10/24/24 Hearing, 26:6-15, App'x. to Kenoyer Resp.

ORDER DENYING MOTION FOR
ORDER TO SHOW CAUSE

- 7

to the Court for review, or even submitted declarations testifying to the nature of their contents, and Kenoyer claims that they "do not constitute the type of information that was the concern of Ameriprise or contemplated within the TRO." Kenoyer's Resp. at 14. Kenoyer describes certain categories the documents fall into (including, *e.g.*, client-related documents he is permitted to have, old marketing material, and lists of client names). It is, furthermore, evident that "Kenoyer never used the Documents to solicit clients," and "never transmitted the Documents to LPL." Kenoyer Decl. at ¶¶ 4; ¶¶ 9-10. Under these circumstances, Plaintiff has failed to demonstrate by "clear and convincing" evidence that Kenoyer failed to return any "confidential, proprietary, and trade secret information" within the scope of the TRO.

The record reflects that Kenoyer is no longer in possession of the computer on which these documents were stored, and there is no allegation that Kenoyer continues to possess the documents or any other prohibited material. Further, Plaintiff has failed to outline what compensatory sanctions it might be entitled to, even if it had demonstrated that the material was subject to the TRO. The evidence does not show that Kenoyer used the documents to solicit Ameriprise clients, or in any other way that damaged Ameriprise. They were returned before Ameriprise filed the instant motion, so even attorneys' fees associated with this motion could not be attributed to their retention. Any award to parties seeking contempt sanctions "must be limited to their actual loss for injuries which result from the noncompliance." *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1366–67 (9th Cir. 1987) (cleaned up, quoting *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir.1983)). No actual loss has been shown here, confirming that a contempt order based on Plaintiff's claim that Kenoyer failed to timely return confidential documents is unwarranted.

ORDER DENYING MOTION FOR
ORDER TO SHOW CAUSE

- 8

Finally, for the same reasons Ameriprise has failed to demonstrate to a clear and convincing degree that Kenoyer has breached the terms of the TRO, it has failed to demonstrate that LPL as his principal has as well. LPL did not itself solicit Ameriprise clients or retain any documents, and in the absence of adequate proof that Kenoyer breached the TRO, Plaintiff has likewise failed to demonstrate that LPL failed to take steps it was required to take to ensure Kenoyer complied with the TRO.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Order to Show Cause is hereby DENIED.

DATED this 17th day of June, 2025.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER DENYING MOTION FOR
ORDER TO SHOW CAUSE

- 9